IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | CRIMINAL NO. **3:18-CR-345-L** |
| | § | |
| **ANDREW KASNETZ** | § | **Filed Under Seal and Ex Parte** |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Andrew Kasnetz's *pro se Ex Parte Motion for Leave to File Emergency Motion to Terminate Counsel* (Doc. 183)*,* filed April 7, 2022, and retained defense counsel Jeffrey Hall's *Motion for Leave to File Opposed Emergency Motion to Withdraw as Attorney of Record* (Doc. 186), filed April 8, 2022. In the *pro se* motion (Doc. 183-1) that he seeks leave to file, Defendant Andrew Kasnetz requests to terminate his retained attorney Mr. Hall based on his contention that Mr. Hall has not provided him with adequate representation as required by the Sixth Amendment.  Instead of requesting additional time to retain substitute counsel, Defendant Kasnetz requests that the court appoint counsel to represent him, pursuant to 18 U.S.C. § 3006A of the Criminal Justice Act ("CJA"), because he is financially unable to pay another attorney, and he admits to not paying Mr. Hall since at least December 2021 for services performed on his behalf. After conducting a hearing on both motions, the court **grants** Defendant's *pro se* Motion for Leave (Doc. 183) and **directs** the clerk of the court to file and term Defendant's *pro se* motion (Doc. 183-1) and supporting exhibits (Docs. 183-1 to 183-11) that are attached to the Motion for Leave; **grants in part** Defendant's *pro se* motion (Doc. 183-1); and **denies** Mr. Hall's Motion for Leave (Doc. 186).

The court is not convinced that the issues between Defendant and Mr. Hall are irreconcilable or that allowing Defendant to obtain new counsel, either retained or appointed, will

prevent Defendant from similarly complaining about any newly obtained counsel. This case has been pending approximately four years. Mr. Hall is Defendant's seventh retained attorney. Defendant has shown himself to be a "difficult" client who insists on micromanaging his defense and focusing on issues and defensive theories that his attorneys have not always agreed with or those that his attorneys believed would violate their professional ethical duties if made by them. This will not change if Defendant is allowed to obtain new counsel. Moreover, allowing him to obtain new counsel on the eve of trial would only serve to delay the trial of this case again unnecessarily and encourage Defendant to continue to engage in delay tactics. Accordingly, Defendant Kasnetz's *pro se* motion (Doc. 183-1) is **granted to the extent** that attorney Jeffrey T. Hall is **appointed**, pursuant to 18 U.S.C. § 3006A, to represent him in this case, and that such appointment is effective retroactively to **December 1, 2021**. Defendant Kasnetz's *pro se* motion (Doc. 183-1) is **denied in all other respects**. Appointing Mr. Hall to continue his representation of Defendant Kasnetz in this case will remedy Defendant's and Mr. Hall's concern about financial hardship, while at the same time addressing the court's concern about further delays by Defendant Kasnetz.

## I.     Factual and Procedural Background

The grand jury indicted Defendant Kasnetz on July 11, 2018, for possession of and receiving prepubescent child pornography. Doc. 1. On July 10, 2018, Todd Donald Shapiro filed a notice of attorney appearance on Defendant's behalf. Mr. Shapiro filed four motions to continue the trial in this case, which were all granted. Trial was set for March 11, 2019, when Defendant moved to substitute retained counsel. Doc. 26. District Judge Sidney A. Fitzwater granted the motion to substitute counsel on January 29, 2019, and reset the case for trial to April 29, 2019. Doc. 29. During the representation period of second retained counsel, Michael Todd,

four more continuances were granted (one *sua sponte*), and trial was reset for June 1, 2020. Docs. 31, 42, 50, 52. New retained counsel, James S. Bell, entered an appearance on January 1, 2020, however, and trial was reset for October 19, 2020. Docs. 54, 56. On July 31, 2020, Defendant moved for an emergency continuance, which was granted and resulted in the trial being continued to January 25, 2021. Doc. 70. Within a month of requesting that extension, however, James S. Bell moved to withdraw. Doc. 73. Michael Todd was permitted to withdraw shortly after that. Docs. 78, 82, 84.

Paul Saputo entered a notice of appearance as retained counsel on November 2, 2020, and the trial was reset for July 26, 2021. Docs. 83, 87. Shortly after that, the trial was reset for August 23, 2021, and transferred to the undersigned. Doc. 88. On January 7, 2021, George R. Milner, III made an appearance on Defendant's behalf. Doc. 89. On April 27, 2021, Connor Allan Nash entered an appearance as counsel for Defendant and ultimately designated himself as lead counsel. Doc. 92, 108. On April 30, 2021, Defendant moved *pro se* to terminate Mr. Saputo, and he was permitted to withdraw on May 7, 2021. Docs. 94, 99.

Meanwhile, Attorney Nash filed an emergency motion for continuance (Doc. 98), and Defendant filed a *pro se* motion to terminate counsel and another *pro se* motion to continue, which were ultimately stricken. Docs. 105, 106. The emergency motion was heard on May 28, 2021, and an amended scheduling order was entered that reset the trial for April 11, 2022. Doc. 110. In response to the *pro se* motion to terminate counsel, George R. Milner moved to withdraw and was permitted to do so. Docs. 116, 117.

Shortly after the trial was reset for April 11, 2022, Attorney Nash moved to withdraw because of an ethical conflict between him and Defendant. Doc. 126. Defendant opposed that motion, but the undersigned determined that it should be granted after conducting an *ex parte*

hearing. On June 24, 2021, the court ordered Defendant Kasnetz, by July 26, 2021, to either retain substitute counsel or file a *Faretta* motion to represent himself. Doc. 133. The day after that deadline passed, Defendant Kasnetz moved for leave to request an extension of the trial deadlines, citing an inability to retain new counsel. Doc. 136. The court entered an order for the Defendant to file a list of potential attorneys that he had contacted and an explanation for missing the July 26, 2021 deadline. Doc. 137. The court did so because it "seriously question[ed] Defendant's intentions and whether his Motion for Leave to seek yet another continuance of court-ordered deadlines [wa]s presented in good faith rather than for the improper purpose of further delaying the proceedings in this case, particularly considering the well-documented history of delays in this case, many of which [we]re attributable to Defendant, and the court's admonition about additional delays." *Id*. at 3. The court warned that Defendant's continued failure to comply with the court's orders could result in the imposition of a contempt finding and sanctions, an order of detention, and/or a waiver of his right to retained counsel of his choice. *Id.* at 3-4.

On August 13, 2021, Defendant filed a notice with the court advising that he did not want a *Faretta* hearing "at this time," and requested more time to retain counsel. Doc. 139. The court granted the request and extended Defendant's deadline to retain counsel to September 10, 2021, but it again cautioned him that delays in retaining counsel motivated by bad faith efforts to manipulate the orderly progress of the case may result in the waiver of the right to counsel. Doc. 140.

On September 10, 2021, Jeffrey T. Hall entered an appearance as Defendant's retained counsel. Doc. 142. Attorney Hall has been actively litigating the case and filing pretrial motions and other documents in preparation for trial. Such motions include the filing of two motions to suppress consisting of approximately sixty pages of briefing and evidence that also incorporated

**Memorandum Opinion and Order- Page 4**

information from a May 7, 2020, motion to suppress filed by prior counsel; a motion for extension of time to file pretrial motions; a motion to quash the Superseding Indictment; four discovery motions; and pretrial materials.

On Thursday, April 7, 2022, four days before the pretrial conference was scheduled to take place on Monday, April 11, 2022, Defendant filed his *pro se* motion to terminate Jeffrey Hall as counsel, contending that Mr. Hall has had failed to provide effective assistance of counsel. Because this motion was filed manually on the afternoon of April 7, it was not docketed by the clerk of the court until April 8, 2022. The motion and attachments consist of approximately 500 pages. Recognizing the lateness and delay in filing the motion, Defendant asserts that he has been "bedridden for the last six months" and "unable to work," as a result of surgeries he had on February 15, 2022; March 8, 2022; and March 25, 2022, including an ablation surgery that he previously represented to the court was scheduled for July 2021 to address a life-threatening heart condition. Def.'s Mot. 2. In addition, Defendant asserted during the hearing on the motions that it took several months to obtain the assistance of someone to help him prepare the voluminous filing.

According to his motion, Defendant's dissatisfaction with Mr. Hall's representation stems in large part from his contention that Mr. Hall has refused to do a number of things that Defendant requested him to do, including the filing of various motions and serving subpoenas that were prepared by someone other than Mr. Hall at Defendant's request. Specifically, Defendant asserts that Mr. Hall: (1) had too many other cases that were interfering with or limiting his availability and the time he had to spend on his case; (2) misrepresented his experience in conducting federal criminal trials; (3) refused to file motions prepared by another person, who Defendant Kasnetz enlisted to assist in his defense, including discovery motions and a third motion to suppress that

**Memorandum Opinion and Order- Page 5**

he requested Mr. Hall to file after the motion to suppress deadline to address, for example, his contention that he was not presented with a warrant when the search was conducted; (4) is responsible for issues surrounding the hiring of a defense expert even though he convinced a friend to issue a check for $9,600; (5) refused to serve 24 subpoenas requested by Defendant that were "prepared for him" by an unidentified person; refused to seek information under the Freedom of Information Act from the City of Dallas, City of Farmer's Branch, City of Mesquite, City of Carrollton, and City of Plano; and (6) refused to withdraw after being requested to do so in December 2021.

On April 8, 2022, Mr. Hall filed a motion for leave to file an emergency motion to withdraw as counsel of record, based on counsel having received the *pro se* motion to terminate the representation. Doc. 186. On April 11, 2022, Mr. Hall moved for leave to continue the trial. In support, he also filed a letter from Trung Duong, M.D., who did not perform any of Defendant's surgeries, but, nevertheless, expressed the opinion that Defendant's health issues and surgeries made it difficult for him to concentrate on his legal defense. Dr. Duong also indicated that Defendant was not to blame for the delays in his surgeries.

On April 11, 2022, instead of conducting a pretrial conference to address the last-minute defense motions for leave to file objections to exhibits and other pretrial materials, the court held a hearing on the Defendant's and his counsel's motions to terminate Mr. Hall as counsel. During the *ex parte* portion of the hearing, Defendant and Mr. Hall both expressed the belief that the disagreements between them are irreconcilable. Based on the information gathered at the hearing, it is apparent to the court that, while Defendant wants an attorney and does not wish to represent himself, he also wants to micromanage his defense and exert control over virtually all strategic and tactical decisions, even though he has repeatedly admitted that he does not have any legal

experience and proceeding in this manner may conflict with his attorney's professional obligations. This same issue has caused problems in the past and led to prior attorneys being allowed to withdraw either at Defendant's or counsel's request. Additionally, a large concern expressed by both Defendant and Mr. Hall is Defendant's financial situation. Mr. Hall indicated, and Defendant did not dispute, that he had not been paid for his services since December 2021. For this reason, Defendant requests that the court appoint counsel under the CJA to represent him.

**II.      Discussion**

The Sixth Amendment right to counsel has long been construed to include a criminal defendant's qualified right to retain counsel of the defendant's own choosing. *United States v. Hughey,* 147 F.3d 423 (5th Cir. 1998) (citing *Wheat v. United States,* 486 U.S. 153 (1988) (holding that the essential aim of the Sixth Amendment is to "guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.")). The Sixth Amendment right to counsel of choice, however, is not absolute; it is limited and protects only a paying defendant's fair or reasonable opportunity to obtain counsel of choice. *Id.* (citing *United States v. Paternostro,*, 966 F.2d 907, 912 (5th Cir. 1992)). A trial court has wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151-52 (2006). A court, moreover, has an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* (citing *Wheat,* 486 U.S. at 160; and *Morris v. Slappy,* 461 U.S. 1 (1983)).

Defendant has had ample opportunity to retain his counsel of choice. Mr. Hall has indicated at least twice that he was prepared to try this case, but his continued representation of Defendant

Kasnetz without payment would be a financial hardship. In the interest of fairness and in light of the demands of this court's calendar, the court determines that it is appropriate to appoint Jeffrey T. Hall under the Criminal Justice Act as counsel for Defendant. Proceeding in this manner is particularly appropriate given the late timing of Defendant's recent motion on the eve of trial. Defendant was unable to provide the court with a credible reason for such delay even though he admits that the rift between him and Mr. Hall arose in December 2021. He also could have, but failed to advise the court before now regarding the delays in his surgeries, even though this was an issue that he was aware of well before April 7, 2022. Regardless, the court had the opportunity to observe Defendant for approximately three and one-half hours at the April 11, 2022 hearing during which time he spoke extensively, and there was no indication that he was hindered mentally or physically from participating in the trial or assisting in his defense.

Moreover, most of the delays in this case were avoidable and are directly attributable to Defendant's inability to get along with his attorneys. New counsel, whether retained or appointed, will not resolve this problem or the numerous delays created by it in the past or moving forward. The court is convinced that, even if Defendant is appointed new counsel, the same issues will inevitably arise and unnecessarily further delay the resolution of this case, which is old and needs to be tried. This is a classic case in which history has predictive value—just as the court earlier predicted that Defendant Kasnetz would file something at the last minute to further delay the April 2022 trial setting.

Questions remain as to whether Defendant Kasnetz is financially eligible for appointment of counsel under the CJA. For purposes of the CJA, a person is "financially unable to obtain counsel" and eligible for the appointment of counsel if "the person's net financial resources and income are insufficient to obtain qualified counsel." *See* Admin. Office of the U.S. Courts, *Guide*

*to Judiciary Policy,* Vol. 7, Pt. A, § 210.40.30(a). In determining whether such insufficiency exists, consideration should be given to the cost of providing the person and his dependents with the necessities of life, and the cost of the defendant's bail bond, if financial conditions are imposed, or the amount of the case deposit defendant is required to make to secure release on bond. *Id.*

Under the Guide to Judiciary Policy, however, "doubts as to a person's eligibility should be resolved in the person's favor" because erroneous determinations of eligibility may be corrected at a later time. *Id.* at § 210.40.30(b). Specifically, prior to sentencing (if the defendant is convicted), the court should consider pertinent information contained in the presentence report, the court's intention with respect to fines and restitution, and all other available data bearing on the person's financial conditions for purposes of making a final determination of whether the person has funds available to reimburse the costs of the representation. *Id.* at § 210.40.30(d), (e). Under appropriate circumstances, the court can and should order the person to reimburse the CJA appropriation for such costs. *Id.*

The court understands that Mr. Hall is not a member of this court's CJA Panel. Nevertheless, under the Guide to Judiciary Policy, a presiding district judge may admit an attorney to the CJA Panel *pro hac vice* and appoint him to represent a CJA defendant if the judge determines that the appointment is: (1) in the interest of justice, judicial economy, or continuity of representation; or (2) there is some other compelling circumstance warranting the attorney's appointment. *See* Admin. Office of the U.S. Courts, *Guide to Judiciary Policy,* Vol. 7, Pt. A, § 210.30.30(a). Such appointments should be made only in exceptional circumstances. *Guide,* § 210.30.30(b). An attorney appointed under this provision should possess such qualities as would qualify the attorney for admission to the district's CJA panel in the ordinary course of panel selection. *Guide,* § 210.30.30(c); *see also* Misc. Order No. 3, Criminal Justice Act Plan, Section

X(B)(3), p. 15-16 (rev. July 2021) (appointment procedures under special circumstances).

The court determines that Mr. Hall possesses such qualities notwithstanding Defendant Kasnetz's assertions regarding Mr. Hall's lack of experience in trying criminal cases in federal court. Mr. Hall acknowledged that he has not tried a case in federal court, but there is no evidence to support Defendant Kasnetz's contention that Mr. Hall misrepresented his experience. In reviewing PACER, it is also apparent that Mr. Hall has federal court experience in representing both criminal and civil defendants. Additionally, that Defendant disagrees with Mr. Hall's trial strategy does not alone rise to the level of a conflict that warrants substitution of counsel, particularly at this late stage of the case when all that remain is the trial; nor is it sufficient to give rise to a conflict that would prevent Mr. Hall's appointment under the CJA.

The Sixth Amendment provides criminal defendants with the right to counsel, but the right to counsel of choice does not extend to defendants who require counsel to be appointed to represent them. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). Personality conflicts or disagreements regarding trial strategy alone are insufficient to justify appointment of a different attorney to represent Mr. Kasnetz at this late stage. *See id.* Mr. Kasnetz is entitled to appointment of competent counsel and effective assistance of counsel but not counsel of his choice or counsel that will blindly follow his instructions or counsel that files frivolous motions or objections at his request, and the court determines that Mr. Hall is competent to represent Defendant Kasnetz in this case, which is not complex. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Green v. Johnson*, 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) (citation omitted). Although a large number of files was seized during the search of Defendant's residence, the two charges against him for possessing and receiving child pornography are limited to a small number of files. The court also

expressly determines that, even if a conflict exists, it is one that Mr. Kasnetz has created, and he should not be rewarded for something that he has caused to happen.

Further, the court disagrees with Defendant's assertion that Mr. Hall's failure or refusal to undertake certain lines of discovery or pretrial strategies urged by Defendant have or will deprive him of a fair trial. The relevance of many of the matters referenced by Defendant is not readily apparent, and it is not uncommon for criminal defendants like him, who lack legal training, to want to focus on issues that they think are key or material to their defense, although, in actuality, they have no real legal significance.

For example, Defendant makes much ado about Mr. Hall's failure to file a third motion to dismiss after the deadline for filing such motions had passed. The court, however, previously made clear its reasons for not wanting to *further* continue the motion to suppress deadline out of concern that it would not have sufficient time before the April 11, 2022 trial and pretrial deadlines to rule on a motion to suppress. There is also no indication that Defendant could have established good cause for the late filing. In addition, the court would not have condoned a piecemeal filing of multiple or additional motions to suppress other than those already filed. In other words, the court would not have granted leave to allow Defendant to file a third motion to suppress even if leave had been requested by Mr. Hall.

Moreover, Defendant's primary reason for wanting to file a third motion to suppress was to contest the validity of the search on the grounds that he was not provided a copy of the search warrant before the search was conducted or that no warranted was "presented" or issued before the search. The Supreme Court, however, has previously held that the Fourth Amendment does not require the executing officer to present the property owner with a copy of the warrant before conducting the search. *United States v. Grubbs*, 547 U.S. 90, 98-99 (2006). Furthermore, the Fifth

Circuit has recognized that, under the good faith exception to the exclusionary rule, evidence obtained as a result of law enforcement officers' objectively reasonable reliance on a warrant is not suppressed even if the warrant is later invalidated. *United States v. Hinojosa*, 349 F.3d 200, 203 (5th Cir. 2003).

Defendant's contentions or suspicion regarding the timing of the issuance of the search warrant and other matters pertaining to Mr. Hall's alleged motive for not pursuing this and other suppression issues are based on nothing more than unsubstantiated speculation and vague assertions regarding "information and belief." Def.'s Mot. 3. Such unsupported assertions are insufficient even if raised in a motion to suppress and could have subjected Mr. Hall to sanctions if the court determined that he knew they had no basis in fact or law. This is particularly so given the arguments and statement of facts included in Defendant's prior motions to suppress in which he expressly acknowledged that: (1) the search occurred on February 20, 2018; and (2) the copy of the search warrant that was left at his residence and attached to his prior motions were signed and dated *the same date as the search*—February 20, 2018, at 8:49 a.m.

In another last-minute filing, during a lunch recess of the pretrial conference held on April 11, 2022, Defendant Kasnetz visited the clerk's office where he manually submitted a *pro se* letter to the court for docketing by the clerk of the court. The court was not aware of this filing until after the second pretrial conference concluded on April 12, 2022, because the letter was not actually docketed by the clerk's office until shortly before that hearing started, and Mr. Kasnetz did not advise the court during the April 12, 2022 hearing that he had filed yet another document setting forth his complaints regarding Mr. Hall. In this letter, he again summarizes his various complaints about Mr. Hall. Unlike the prior *ex parte* motions that are the issue of this memorandum opinion and order, this letter was not filed under seal or *ex parte*.

**Memorandum Opinion and Order- Page 12**

In addition, for the first time, Defendant Kasnetz expounds in the letter on his contention regarding the validity of the search warrant and argues that, if Mr. Hall had pointed out the discrepancies in the times between the copy of the warrant that was issued and the copy of the warrant that was provided to him several hours after the search of his residence commenced, the court would have scheduled an evidentiary hearing to resolve this issue of fact. Attached to his letter are two copies of the same search warrant. Both are dated February 20, 2018. One search warrant indicates that it was signed at 8:49 a.m. The other indicates that it was signed at 8:59 a.m.

This discrepancy, however, does not support Defendant's contention and suspicion that the search was conducted before issuance of the warrant. It is undisputed that the search was conduct on February 20, 2018, and the warrant was returned executed later that same day. Further, there are no facts or evidence in the record as to the time the search commenced. Absent specific, detailed facts or evidence, Defendant Kasnetz would not have been entitled to a hearing because, as the court previously explained in denying his other motions to suppress that included requests for an evidentiary hearing:

> "Hearings on motions to suppress are not discovery proceedings, but are instead designed for the presentation of evidence in support of factual allegations which, if proven, would justify the relief sought." *United States v. Harrelson*, 705 F.2d 733, 738 (5th Cir. 1983). For this reason, requests for evidentiary hearings are not granted as a matter of course; rather, they are only granted "when the defendant alleges sufficient facts which, if proven, would justify relief. *Id.* at 737; *United States v. Mergist*, 738 F.2d 645, 648 (5th Cir. 1984) (citations omitted). "Factual allegations set forth in the defendant's motion, including any accompanying affidavits, must be " 'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.'" *Harrelson*, 705 F.2d at 737 (citations omitted). "General or conclusionary assertions, founded upon mere suspicion or conjecture, will not suffice." *Id.*

*United States v. Kasnetz*, No. 3:18-CR-345-L, 2022 WL 847217, at *3 (N.D. Tex. Mar. 22, 2022).

Defendant also contends that Mr. Hall failed to appeal or "file a 404(b) Motion for the court to Reconsider" the magistrate judge's recent rulings on his discovery motions and, during the hearing, he did not ask many of the questions prepared by him and his expert. Def.'s Mot. 10. As a preliminary matter, the court notes that Mr. Hall, likely at Defendant Kasnetz's insistence, filed a last-minute motion to continue the hearing on those motions, which was denied by the magistrate judge. As reasons for the requested continuance, the motion indicated that his expert could not be available before May to attend a hearing on the motions, and that Defendant himself was unable to assist in his defense because of his recent surgeries. Both, however, ultimately attended the hearing, but neither was called by the defense to testify. Instead, Mr. Hall opted to call the Government's expert witness about the software at issue. This is one of many instances in which Defendant Kasnetz has repeatedly attempted to unnecessarily delay the proceedings in this case and, as a result, he has seriously undermined his credibility with the court.

Concerned that Defendant might try to delay the trial by appealing or seeking reconsideration of any unfavorable rulings by the magistrate judge, the court listened to the live audio feed of the entire hearing and determined at the conclusion of the hearing, even before Defendant filed his current pro se motion, that magistrate judge's rulings were correct. Thus, any request for reconsideration would have been unavailing and a waste of time.

Further, while Defendant Kasnetz takes issue with Mr. Hall's performance at the hearing, it appeared to the court that his decision to call the Government's expert witness, rather than the defense's expert witness, was a strategic one, as it gave the defense an opportunity to obtain a preview and insight regarding the Government's case and the testimony that this witness will likely provide at trial. Defendant Kasnetz also takes issue with the questions that Mr. Hall asked this witness (or did not ask) and contends that he "passed the witness quickly despite [his] urging"

that he not do so. Def.'s Mot. 10. Defendant asserts that Mr. Hall handed him a note on a "post-it" saying, "This Judge Decided before we started." *Id.*

As indicated, the court listened to the hearing on Defendant's discovery motions. The hearing was not unnecessarily truncated or short, and most of the hearing was spent on Defendant's motion seeking to compel production of the software and questioning by both parties of the Government's expert witness. Frankly, after reviewing the parties' briefs on this and the other discovery motions filed by the defense, the court seriously questioned whether Defendant was entitled to any of the relief sought, which appeared to be more akin to a fishing expedition. In addition, it did not appear that Defendant had or would be able to meet his burden for obtaining the discovery sought. It is entirely possible that the magistrate judge came to the same conclusion before the hearing or had the same concerns, and she quickly determined with respect to most of the motions, after hearing from the defense at the hearing, that Defendant had not met his burden and, thus, was not entitled to the discovery sought.

Regardless, an experienced lawyer knows when a judge has made up his or her mind, and also understands that it would be pointless to continue belaboring a point if doing so could risk alienating the judge. Alternatively, it could be that Mr. Hall made the strategic decision to not tip his hand to the Government by asking additional questions of this witness, particularly if he sensed that the magistrate judge was not going to grant the defense's motion to compel the software. Either way, strategic decisions such as this or disagreements regarding trial strategy do not support Defendant's bald assertion that he has been denied effective assistance of counsel; nor is it clear to the court what is meant by his contention that Mr. Hall has yet to "file a 404(b) Motion for the court to Reconsider" the denial of his discovery motions. There is no such thing as a Rule "404(b) Motion for the court to Reconsider" the denial of defense discovery motions, which further

highlights Defendant Kasnetz's lack of legal experience. The court need not belabor the point by addressing each of Defendant's contentions regarding Mr. Hall. It, instead, addresses the foregoing arguments by Defendant to show, by way of example, why many of the issues he is focusing on as a result of his lack of legal training are not material and will not necessarily assist his defense against the charged offenses. Moreover, it is fatuous for Defendant to argue, on one hand, that Mr. Hall has not made himself available as much as he would like, while, on the other hand, contending that a continuance of the proceedings in this case is needed because he has been unable in the past several months to participate in his defense because of his three surgical procedures.

Finally, Defendant contends that Mr. Hall has not spent sufficient time preparing for trial and failed to file a motion in limine or objections to the Government's trial exhibits and Rule 404(b) evidence. Mr. Hall, however, did seek leave to file a motion in limine and objections to the Government's exhibits and Rule 404(b) evidence. The court also advised the parties in the hearing held on April 12, 2022, that it intended to grant the defense's motions for leave, even though doing so would necessitate a brief continuance of the pretrial conference to cover the matters raised, as well as a brief continuance of the trial.

Moreover, according to the several motions for leave and the representations of Mr. Hall and Mr. Kasnetz during the April 11, 2022 *ex parte* hearing, the delay in filing these motions for purposes of objecting to various Government exhibits and evidence was attributable to Mr. Kasnetz's inability to participate in his defense for several months because of his surgeries and post-operative condition. In filings and during the April 11, 2022 *ex parte* hearing, Mr. Hall and Mr. Kasnetz also acknowledged that Mr. Kasnetz had stopped paying Mr. Hall in December 2021 and then waited until of the eve of the April 11, 2022 trial setting to notify the court that he had been unable to pay Mr. Hall for his services for quite some time. It is unreasonable for Defendant

**Memorandum Opinion and Order- Page 16**

to expect his retained attorney to provide legal services for free, and it is readily apparent from Defendant's *ex parte* motion and attachment that he requested and expected Mr. Hall to do quite a lot during this time even though he was not being paid. Mr. Kasnetz has also acknowledged that he is a "difficult" and demanding client. Thus, the situation he now complains of is the result of his own conduct and creation. In addition to being difficult, he waited several months before advising the court of the delays in his surgeries and his inability to pay Mr. Hall. As indicated, however, Mr. Kasnetz should not be rewarded for something that he has brought about.

Accordingly, the court, for all of these reasons, **concludes** that it is in the interest of justice, judicial economy, and continuity of representation to appoint Jeffrey Hall under the CJA. If, at any time after this appointment, Mr. Hall obtains information that Defendant Kasnetz is financially able to make payment, in whole or in part, for legal or other services in connection with this representation, and the source of that information is not protected as a privileged communication, he shall so advise the court. *Guide*, § 210.10.30. Moreover, if it is later determined that Mr. Kasnetz does or did not qualify financially for appointment of counsel under the CJA, the court may issue an order requiring him to reimburse some or all of the CJA amounts paid for his defense.

### III. Conclusion

For the reasons explained, the court **grants** Defendant's *pro se* Motion for Leave (Doc. 183) and **directs** the clerk of the court to file and term Defendant's *pro se* motion (Doc. 183-1) and supporting exhibits (Docs. 183-1 to 183-11) that are attached to the Motion for Leave; **grants in part** Defendant's *pro se* motion (Doc. 183-1); and **denies** Mr. Hall's Motion for Leave (Doc. 186).

Defendant Kasnetz's *pro se* motion (Doc. 183-1) is **granted to the extent** that attorney Jeffrey T. Hall is **appointed**, pursuant to 18 U.S.C. § 3006A, to represent him in this case, and that such

appointment is effective retroactively to **December 1, 2021**. Defendant Kasnetz's *pro se* motion (Doc. 183-1) is **denied** in all other respects. For the same reasons, the court also **denies** Jeffrey Hall's *Motion for Leave to File Opposed Emergency Motion to Withdraw as Attorney of Record* (Doc. 186). Further, now that Mr. Kasnetz has CJA-appointed counsel, there should be no reason for him to file anymore *pro se* documents in this case and, in particular, those that will further delay the trial of this case.

  **It is so ordered** this 13th day of April, 2022.

                 Sam A. Lindsay
                 United States District Judge